**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| **UNITED STATES OF AMERICA**<br><br>**v.**<br><br>**JUAN HERNANDEZ OCHOA,**<br><br>**Defendant.** | **CRIMINAL NO. 18-CR-261 (CRC)** |

**JOINT STATEMENT OF STIPULATED FACTS**

This statement of facts does not purport to include all the Defendant's illegal conduct during the course of his charged offense and is not intended to represent all the Defendant's relevant conduct for sentencing purposes. Nor does it purport to be an inclusive recitation of all that the Defendant heard, knew, or witnessed concerning the illegal activities of himself or those of his co-conspirators. It represents sufficient information for the Court to find a factual basis for accepting the Defendant's guilty plea in the above-captioned matter. Had the Defendant proceeded to trial, the Defendant agrees that the Government's evidence would establish the following beyond a reasonable doubt:

1. Beginning in and around 2015 and continuing thereafter, up to and including 2017, within the country of Mexico and elsewhere, the Defendant combined, conspired, confederated, and agreed with others to distribute 500 grams or more of a mixture and substance containing a detectible amount of methamphetamine, a Schedule II controlled substance, and 1,000 kilograms or more of a mixture and substance containing a detectible amount of marijuana, a Schedule I controlled substance, intending, knowing, and having reasonable cause to believe that such substances would be unlawfully imported into the United States, in violation of 21 U.S.C. §§ 959(a), 960(b)(1)(G), 960(b)(1)(H), and 963, and 18 U.S.C. § 2.

2. During the course and in furtherance of the conspiracy, the Defendant worked as a distributor and transportation coordinator for various drug traffickers, including those associated with the Sinaloa Cartel, who manufactured and distributed large quantities of methamphetamine and marijuana in Mexico for importation into the United States. The Defendant's drug trafficking network consisted of many more than five participants. The Defendant facilitated the purchase of drugs for distribution, and he coordinated the movement of the drugs from the suppliers to various distributors and transporters for ultimate importation into the United States. The Defendant also coordinated the transport of cash from the purchase, and for the sale, of drugs.

3. The Defendant utilized his own people or his network of associates to transport marijuana and methamphetamine in Mexico to Sonora, Mexico, and other border towns along the U.S.-Mexico border where the drugs were then smuggled from the border towns into the United States, often by another group of associates. The Defendant, his workers, and his associates and their workers, utilized various methods of transportation, including private aircraft, human couriers, tunnels, semi-trucks, and vehicles with hidden compartments. Other drug traffickers often came to the Defendant inquiring of whether he knew of drugs available for purchase or whether he knew of planned transports of drugs within Mexico or across the U.S.-Mexico border. The Defendant assisted those associates in obtaining drugs and/or contributing drugs to planned transports, and he also often coordinated and facilitated the transport of those drugs. When the Defendant arranged for or coordinated a transport, he provided instructions to the transporters about the timing of the transport, the amount of drugs that they would be transporting, and the pickup and drop off location for the drugs, and he often kept in contact with them during the planned transportation to check on the status of the drug loads' movements and to confirm

successful delivery. After a load was delivered to its intended location, the Defendant paid the transporter(s) for their services, including in U.S. dollars.

4. For example, the Defendant paid a co-conspirator to transport marijuana and methamphetamine from Mexicali, Mexico, and San Luis Colorado, Sonora, Mexico, into the United States. On one specific occasion, the Defendant contacted the co-conspirator via BlackBerry Messenger and telephone calls and instructed the co-conspirator to coordinate the delivery of marijuana from Sonora, Mexico, to a man in Baja California, Mexico. The Defendant told the co-conspirator to meet boats that transported marijuana from Sinaloa, Mexico, on the shore near the coast of Sonora, Mexico. From the beach, the co-conspirator then transported approximately 1 to 1.5 tons of marijuana to the recipient in Baja California, and the recipient's job was to then smuggle the marijuana to the United States. The Defendant paid the co-conspirator for his transportation services.

5. As another example, the Defendant also asked a co-conspirator to transport approximately 100 to 120 pounds (approximately 45.4 to 54.4 kilograms) of methamphetamine from Sonoyta to San Luis Rio Colorado, both in Sonora, Mexico. The Defendant provided the co-conspirator with a telephone number for the person who was delivering the drugs to the co-conspirator. The co-conspirator contacted that person and then picked up the drugs and delivered them to the Defendant in San Luis Rio Colorado. The Defendant paid the co-conspirator approximately $100 U.S. dollars per pound of methamphetamine as payment for his transport services.

6. As one last example, the Defendant requested methamphetamine from a co-conspirator and then coordinated with that co-conspirator to transport a portion of the methamphetamine for himself and a portion for the co-conspirator for sale, combining the portions

into a larger shipment to fill a semi-truck with methamphetamine after it was flown to the border in a plane. The Defendant also explained to this co-conspirator how the payments for these drugs were distributed, including, on one occasion, totaling the gross payment of $33,000 and noting that $1,000 was given to the person who sells the drugs as commission, $1,000 went to the driver of the semi-truck, and another $1,000 went to help pay for shop expenses, for a total net of $30,000. If there were any issues with the methamphetamine or the shipments with this co-conspirator, the Defendant helped resolve them, including, on one occasion, coordinating with the co-conspirator to notify him of a quality issue with the methamphetamine—specifically, the high was not lasting long and it was staining yellow—and arranging for the return of the product to the co-conspirator as a result.

7. Some of the shipments that the Defendant organized were seized by law enforcement authorities. For example, on October 19 and 20, 2016, U.S. law enforcement authorities seized approximately 2,382 kilograms and 6,264 kilograms of marijuana from warehouse locations in San Diego and San Marcos, California, respectively, including from a subterranean tunnel that ran from inside the San Diego warehouse to a location in Mexico. The Defendant assisted another co-conspirator with the transportation of some of this marijuana by connecting him with a third co-conspirator who agreed to move the marijuana to the United States at no charge.

8. The total amount of methamphetamine involved in the conspiracy for which the Defendant had actual knowledge and involvement was well over 45 kilograms, and the total amount of marijuana involved in the conspiracy for which the Defendant had actual knowledge and involvement well exceeded 10,000 kilograms.

9. The Defendant knew that the methamphetamine and marijuana distributed by the drug trafficking organization, and that he distributed or helped to distribute, were going to be unlawfully imported into the United States.

10. The Defendant agrees venue and jurisdiction lie with this Court pursuant to 18 U.S.C. § 3238.

11. The Defendant also agrees that his participation as a conspirator in the above-described acts were in all respects knowing, intentional, and willful, reflecting an intention and deliberation to commit acts forbidden by the law, and were not in any way the product of any accident, mistake of law or fact, duress, entrapment, or public authority.

12. With his signature below and that of his counsel, the Defendant agrees that he has fully adopted this statement of facts as his own statement. The Defendant is adopting this statement of facts because it is a true and correct summary of the Defendant's own conduct.

13. The Defendant is pleading guilty because the Defendant is in fact guilty.

DEFENDANT'S ACKNOWLEDGMENT

I have reviewed this Statement of Facts in Spanish and have discussed it at length with my attorney, Grant Wille, Esq., who speaks fluent Spanish. This Statement of Facts has been translated into Spanish for me. I understand that the English version controls. I fully understand this Statement of Facts and agree to it without reservation. I do this voluntarily and of my own free will, intending to be legally bound. No threats have been made to me, nor am I under the influence of anything that could impede my ability to understand this Statement of Facts fully.

Further, I have discussed with my attorney Rule 11(f) of the Federal Rules of Criminal Procedure and Rule 410 of the Federal Rules of Evidence, which ordinarily limit the admissibility of statements made by a defendant in the course of plea discussions or plea proceedings if a guilty plea is later withdrawn. I knowingly and voluntarily waive the rights that arise under these rules in the event that I withdraw my guilty plea, withdraw from my Plea Agreement **after signing it**, or breach my Plea Agreement. I understand that, in such instances, the Government will be free to use against me, directly and indirectly, in any criminal or civil proceeding, any statements I have provided pursuant to the Plea Agreement, **after it is signed**, or after entry of the Plea Agreement, including the above Statement of Facts and any statements I make during proceedings before the Court pursuant to Rule 11 of the Federal Rules of Criminal Procedure.

I reaffirm that absolutely no promises, agreements, understandings, or conditions have been made or entered into in connection with my decision to plead guilty except those set forth in the accompanying Plea Agreement. I am satisfied with the legal services provided by my attorney in connection with this Statement of Facts, the accompanying Plea Agreement, and all matters related to it.

JUAN Hernandez ochoa
JUAN HERNANDEZ OCHOA
Defendant

9.29.2026
Date

ATTORNEY'S ACKNOWLEDGMENT

I am the Defendant's attorney. I have fully explained to the Defendant in Spanish the Defendant's rights and the applicable provisions of the Sentencing Guidelines. I have carefully reviewed every part of this Statement of Facts with the Defendant. The Defendant is agreeing to this Statement of Facts voluntarily, intelligently, and with full knowledge of all consequences of the Defendant's plea of guilty. Further, I have discussed with the Defendant Rule 11(f) of the Federal Rules of Criminal Procedure and Rule 410 of the Federal Rules of Evidence, which ordinarily limit the admissibility of statements made by a defendant in the course of plea discussions or plea proceedings if a guilty plea is later withdrawn. I have discussed with my client that, **by signing the Plea Agreement**, the Defendant waives the rights that arise under these rules in the event the Defendant withdraws his guilty plea, withdraws from the Plea Agreement **after signing it**, or breaches the Plea Agreement.

GRANT WILLE, ESQ.
Attorney for Defendant

9.18.26
Date